**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>**INTERGALACTIC THERAPEUTICS, INC.**<br>**f/k/a IGTX, LLC**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No. 23-41067-EDK** |

**PLAN OF LIQUIDATION OF INTERGALACTIC THERAPEUTICS, INC.**

MURPHY & KING, P.C.
28 State Street, Suite 3101
Boston, MA 02109
Harold B. Murphy, Esq.
Andrew G. Lizotte, Esq.
Leah A. O'Farrell, Esq.

Email: alizotte@murphyking.com
Telephone: (617) 423-0400

Dated: April 11, 2024

Intergalactic Therapeutics, Inc. (the "Debtor"), the debtor and debtor-in-possession hereby proposes the following plan of liquidation under Section 1121 of the United States Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meaning specified in Article I. A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine, and neuter, regardless of how stated. The words "in the Plan," "the Plan," "hereto," "herein," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

**1.1.** "Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including Professional Fee Claims.

**1.2.** "Affiliate" shall mean any Person that is an affiliate of the Debtor under the Bankruptcy Code.

**1.3.** "Aldevron" shall refer to Aldevron, LLC.

**1.4.** "Allowed" shall mean, with reference to any Claim or Equity Interest:

(a) a Claim or Equity Interest that has been listed by the Debtor on its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim or Equity Interest as to which a proof of claim or interest has been filed;

(b) a Claim or Equity Interest as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

2

(c) a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d) any Claim or Equity Interest expressly allowed under the Plan or pursuant to the Confirmation Order.

1.5.　"Asset" shall mean all of the Debtor's right, title, and interest of any nature in property of any kind, including, but not limited to, Causes of Action, wherever located, as set forth in 11 U.S.C. § 541 and the proceeds thereof.

1.6.　"Asset Purchase Agreement" shall mean the Asset Purchase Agreement dated March 1, 2024, as further amended, by and between the Debtor and Aldevron.

1.7.　"Avoidance Actions" shall mean Causes of Action arising or held by the Debtor under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

1.8.　"Ballot" means the form approved by the Bankruptcy Court and distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated acceptance or rejection of the Plan.

1.9.　"Bankruptcy Case" shall mean the Debtor's bankruptcy case pending in the Bankruptcy Court.

1.10.　"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time.

1.11.　"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts.

1.12.　"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

1.13.　"Bar Date" shall mean March 18, 2024.

1.14.　"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

1.15.　"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders.)

**1.16.** "<u>Cash Equivalent</u>" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtor, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions included in the list of approved institutions promulgated by the Office of the United States Trustee.

**1.17.** "<u>Causes of Action</u>" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, (a) Avoidance Actions, (b) rights of setoff, counterclaim and recoupment, (c) claims and defenses on contracts or for breaches of duties imposed by law, (d) the right to object to Claims or Equity Interests, (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code, (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury, (g) claims and defenses for the violation of M.G.L. c. 93A, (h) claims and defenses for unjust enrichment, and (i) claims for tax refunds.

**1.18.** "<u>Claim</u>" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.19.** "<u>Class(es)</u>" shall mean those classes designated in Article III of the Plan.

**1.20.** "<u>Collateral</u>" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.21.** "<u>Confirmation</u>" shall mean confirmation of this Plan by the Bankruptcy Court under Section 1129 of the Bankruptcy Code.

**1.22.** "<u>Confirmation Date</u>" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

**1.23.** "<u>Confirmation Hearing</u>" shall mean the hearing before the Bankruptcy Court on confirmation of the Plan.

**1.24.** "<u>Confirmation Order</u>" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.25.** "<u>Contingent or Unliquidated Claim</u>" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.26.** "<u>CSC</u>" shall mean CSC Leasing Company.

**1.27.** "<u>Cure Claims</u>" means pre-petition amounts due to counterparties to Executory Contracts and Unexpired Leases that have been assumed by the Debtor.

**1.28.** "<u>Debtor</u>" shall mean Intergalactic Therapeutics, Inc.

**1.29.** "<u>Disclosure Statement</u>" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.30.** "<u>Disputed Claim</u>" shall mean:

    (a)    If no proof of claim relating to a Claim has been filed, a Claim that is listed in the Schedules as unliquidated, disputed or contingent; or

    (b)    If a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor, Reorganized Debtor, or a party with standing to dispute the Claim in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

    (c)    A Claim that is a Contingent or Unliquidated Claim.

**1.31.** "<u>Disputed Claim Amount</u>" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.32.** "<u>Disputed Claim Reserve</u>" shall have the meaning set forth in Section 6.5 of the Plan.

**1.33.** "<u>Distribution Record Date</u>" shall mean the date on which the Bankruptcy Court enters an order approving the Disclosure Statement or such other date established by the Bankruptcy Court.

**1.34.** "<u>Effective Date</u>" shall mean the first Business Day on which the conditions set forth in Article X of the Plan have been satisfied.

**1.35.** "<u>Equity Interest</u>" shall mean the interest of any holder of any voting or non-voting equity of the Debtor, including treasury stock and all options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to acquire at any time such equity.

**1.36.** "<u>Estate</u>" shall mean the estate created by the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

**1.37.** "<u>Executory Contract</u>" shall mean a contract to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.38.** "<u>Final Order</u>" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal, seek leave to appeal or certiorari, or request re-argument, review or rehearing has expired and as to which no appeal, petition for leave to appeal or certiorari, or request for re-argument, review or rehearing has been timely filed, or (b) any appeal, petition for leave to appeal or certiorari, re-argument, review, or rehearing that has been or may be made has been resolved by the highest court to which the order or judgment was appealed, from which leave to appeal or certiorari was sought, or to which the request was made, and no further appeal or petition for leave to appeal or certiorari, or request for re-argument, review or rehearing has been or can be taken or granted, and as a result of which such order shall have become final in accordance with applicable law; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.39.** "<u>Impaired</u>" shall mean, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.40.** "<u>General Unsecured Claim</u>" shall mean a Claim that is: (a) not a Secured Claim, (b) not entitled to priority of payment under Section 507 of the Bankruptcy Code, and (c) not a Claim for an Equity Interest.

**1.41.** "<u>Insider</u>" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code, provided that it shall not include the Debtor.

**1.42.** "Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

**1.43.** "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a Final Order of the Bankruptcy Court or by agreement of the Debtor.

**1.44.** "Liquidating Supervisor" shall mean Craig Jalbert, or his successor, as the person to supervise the process of liquidating the Assets, determining claims, effecting distributions, and otherwise administering the Plan.

**1.45.** "Miscellaneous Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff, not including any Secured Claim otherwise classified in the Plan.

**1.46.** "Organization Documents" shall mean, as applicable, the Debtor's operating agreements, trust agreements, articles of incorporation, bylaws, corporate minute books and such other documents evidencing the Debtor's formation and/or operation in such jurisdictions in which the Debtor is authorized to conduct business.

**1.47.** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.48.** "Permitted Investment" shall mean Cash Equivalents having maturities sufficient to enable the Reorganized Debtor to make the payments required under the Plan.

**1.49.** "Petition Date" shall mean December 19, 2023.

**1.50.** "Plan" shall mean this *Plan of Liquidation of Intergalactic Therapeutics, Inc.*, including, without limitation, all exhibits, supplements, appendices, and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.51.** "Plan Administration Expenses" shall mean the expenses paid and/or incurred by the Reorganized Debtor including, without limitation, the Liquidating Supervisor's compensation and reimbursement of expenses pursuant to Section 7.6 of the Plan, and fees and expenses of the Reorganized Debtor's professionals.

**1.52.** "Priority Claims" shall mean all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**1.53.** "Priority Tax Claims" shall mean any timely filed Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.54.** "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.55.** "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 328, 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

**1.56.** "Pro Rata" shall mean when used with reference to a distribution of property under the Plan, proportionately so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(1) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.

**1.57.** "Reorganized Debtor" shall mean the Debtor, from and after the Effective Date as reconstituted pursuant to the Plan and any associated documents.

**1.58.** "Sale" shall mean the sale of substantially all of the Debtor's Assets pursuant to the Asset Purchase Agreement by and between the Debtor and Aldevron.

**1.59.** "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interest, and the statement of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.60.** "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.61.** "Security Deposit" shall mean Cash of the Debtor held by CSC in the amount of $54,261.00, plus any accrued interest.

**1.62.**   "Unexpired Lease" shall mean a lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.63.**   "Unimpaired" shall mean a Claim or Equity Interest that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

## ARTICLE II

## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

**2.1    Non-Classification.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan.  All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

**2.2    Administrative Expense Claims.**

(a)    General.  On, or as soon as reasonably practicable after, the later of (a) the Effective Date, (b) the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (c) the date on which an Allowed Administrative Expense Claim becomes payable under any agreement or applicable law relating thereto, each holder of such Allowed Administrative Expense Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim. Notwithstanding the foregoing, (y) any Allowed Administrative Expense Claim based on a liability incurred by the Debtor in the ordinary course of business during the Bankruptcy Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto and (z) any Allowed Administrative Expense Claim may be paid when payable under applicable law or on such other terms as may be agreed to between the holder of such Claim and the Reorganized Debtor.

(b)    U.S. Trustee's Fees.  The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

(c)    Professional Compensation and Expense Reimbursement Claims.

(i)    Within thirty (30) days after the Effective Date, each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

(ii)    Any Allowed Professional Fee Claim shall receive: (i) payment within seven (7) business days upon entry of a Final Order approving such Claim, or (ii) payment as agreed between the holder of the Allowed Administrative Expense Claim and the Reorganized Debtor.

(iii)    All fees and expenses of Professionals retained by the Liquidating Supervisor for services rendered after the Effective Date shall be paid by the Reorganized Debtor upon the receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Reorganized Debtor agree. No further order or authorization from the Bankruptcy Court shall be necessary to permit the payment of the fees and expenses of Professionals for services rendered after the Effective Date.

**2.3    Priority Tax Claims.**

On, or as soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Priority Tax Claim, (i) payment in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code, or (ii) payment as agreed between the holder of the Allowed Priority Tax Claim and the Reorganized Debtor.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Claims against and Equity Interests in the Debtor are categorized below for all purposes under the Plan including voting, Confirmation and distribution pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.

**3.1    Claim and Equity Interest Categories**

| Class | Designation | Impairment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | CSC Secured Claim | Unimpaired | No (deemed to accept the Plan) |
| 2 | Miscellaneous Secured Claims | May be Impaired | Yes |
| 3 | Priority Claims | Unimpaired | No (deemed to accept the Plan) |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Equity Interest | Impaired | Yes |

### 3.2 Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the Confirmation Date, a holder of an Allowed Claim or Equity Interest, or a holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1. Class 1 - CSC Secured Claim

(a) <u>Classification</u>. Class 1 consists of the Secured Claim of CSC, which is Allowed in the amount of $54,261.00.

(b) <u>Impairment and Voting</u>. Class 1 is unimpaired under the Plan and is entitled to vote to accept or reject the Plan.

(c) <u>Claim Treatment</u>. CSC shall be authorized to apply its Security Deposit in full satisfaction of its Allowed Secured Claim in the amount of $54,261, plus accrued interest on the Security Deposit.

### 4.2. Class 2 – Miscellaneous Secured Claims

(a) <u>Classification</u>. Class 2 consists of the Allowed Miscellaneous Secured Claims.

(b) <u>Impairment and Voting</u>. Class 2 may be impaired under the Plan. Each holder of a Miscellaneous Secured Claim shall be entitled to vote to accept or reject the Plan.

(c) <u>Claim Treatment</u>. In full and complete satisfaction, settlement, discharge and release of their respective Allowed Miscellaneous Secured Claim, each holder of an Allowed Miscellaneous Secured Claim shall receive, as soon as practicable after the later of the Effective Date or entry of an order of the Bankruptcy Court allowing such Claim, either (i) payment of the Net Proceeds of the Collateral securing its Allowed Secured Claim up to the amount of such Claim, (ii) return of the Collateral securing its Allowed Secured Claim, (iii) treatment as agreed between the Reorganized Debtor and the holder of the Allowed Miscellaneous Secured Claim, or (iv) treatment as determined by the Bankruptcy Court.

(d) <u>Liens</u>. The Liens held by the holder of an Allowed Miscellaneous Secured Claim shall be treated as follows:

    (i) <u>Retention of Liens</u>. Any Liens held by the holder of an Allowed Miscellaneous Secured Claim shall be retained by the holder of an Allowed

Miscellaneous Secured Claim to secure the payment of the Allowed Miscellaneous Secured Claim pursuant to the Plan.

(ii)     <u>Discharge of Liens</u>.  Upon payment of an Allowed Miscellaneous Secured Claim pursuant to the Plan: (i) all Liens securing the Allowed Miscellaneous Secured Claim shall be deemed canceled, discharged, and released, and (ii) the holder of the Allowed Miscellaneous Secured Claim shall deliver to the Reorganized Debtor, within five (5) Business Days of the payment in full of the Allowed Miscellaneous Secured Claim, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of such Liens.

**4.3.   Class 3 - Priority Claims**

(a)     <u>Classification</u>.  Class 3 consists of Allowed Priority Claims.

(b)     <u>Impairment and Voting</u>.  The Priority Claims are Unimpaired under the Plan and shall be deemed to have accepted the Plan.

(c)     <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, and release of the Allowed Priority Claims, the holders of Allowed Class 3 Claims shall be paid in full in Cash as soon as practicable after the later of the Effective Date or entry of an order of the Bankruptcy Court allowing such Claim.

**4.4.   Class 4 - General Unsecured Claims**

(a)     <u>Classification</u>.  Class 4 consists of Allowed General Unsecured Claims.

(b)     <u>Impairment and Voting</u>.  The General Unsecured Claims are Impaired under the Plan.  Each holder of a General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(c)     <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, and release of the Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claim shall be paid in Cash as soon as practicable after the later of the Effective Date or entry of an order of the Bankruptcy Court allowing such Claim a *Pro Rata* share of the proceeds of Assets after payment or reserve for payment of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Claims in Classes 1, 2, 3, and Plan Administration Expenses.

**4.5.   Class 5 - Equity Interest.**

(a)     <u>Classification.</u>  Class 5 consists of all Equity Interests in the Debtor.

12

(b)     <u>Impairment and Voting</u>.  Class 5 is Impaired under the Plan.  Each holder of an Equity Interest shall be entitled to vote to accept or reject the Plan.

(c)     <u>Treatment</u>.  The holders of Class 5 Equity Interests shall retain their shares in the Debtor and shall be entitled to receive a *Pro Rata* share of the proceeds of Assets after payment in full or reserve for payment in full of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Claims in Classes 1, 2, 3, 4, and Plan Administration Expenses.

Except the right to receive the foregoing distribution, if any, the holders of Class 5 Equity Holders shall retain no other rights in or against the Reorganized Debtor including, without limitation, the right to vote their shares or take any action to interfere or otherwise affect the Reorganized Debtor's and Liquidating Supervisor's rights and responsibilities under the Plan.

## 4.6.   Reservation of Rights.

The Reorganized Debtor reserves the right to, among other things, (a) object to any Claim, (b) contest the right of the holder of any Claim or Equity Interest to receive distributions under the Plan, and (c) seek to subordinate any Claim for inequitable conduct or otherwise.

## 4.7.   Special Provision Regarding Unimpaired Claims.

Except as otherwise provided in this Plan, nothing shall affect the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to, all rights with respect to legal and equitable defenses to, setoffs against, or recoupments of Unimpaired Claims.

## 4.8.   Voting of Claims.

Each holder of an Allowed Claim in an Impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan.  Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered Ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

## 4.9.   Acceptance by Impaired Classes.

An Impaired class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## 4.10.   Elimination of Classes.

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under Section 1129(a)(8) of the Bankruptcy Code.

**4.11.  Nonconsensual Confirmation.**

If any Impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any Impaired class is deemed to have rejected the Plan, the Debtor reserves the right (a) to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with Section 12.3 of the Plan.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1   Plan Implementation.**

(a) Effectuation of Plan.  Confirmation of the Plan shall constitute authorization for the Debtor to effectuate the Plan and to enter into all documents, instruments, and agreements reasonably necessary to effectuate the terms of the Plan.  The Debtor shall remain in existence as the Reorganized Debtor until dissolved pursuant to the Plan.

(b) Appointment of Liquidating Supervisor, Administration of Reorganized Debtor. As of the Effective Date, Craig Jalbert shall be appointed the Liquidating Supervisor.  The Liquidating Supervisor's rights and powers shall include, subject to any limitations set forth in the Plan, the right and power on behalf of the Reorganized Debtor to:

i.   Sell at public or private sale, lease, exchange, transfer, convey or otherwise dispose of, on such terms and conditions, and at such time or times as the Liquidating Supervisor shall determine, any or all of the Reorganized Debtor's remaining Assets (whether tangible or intangible);

ii.   Grant options, make contracts, retain brokers, deliver deeds or other instruments of conveyance or transfer, and/or delegate to an attorney in fact the power to execute all documents necessary to accomplish a sale, lease, exchange, transfer, conveyance or other disposal of any Asset;

iii.   Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Liquidating Supervisor's duties;

iv.   Open and close accounts on behalf of the Reorganized Debtor with any banking, financial or investment institution, make deposits and withdrawals of cash and other property into or from any such account, make or endorse checks with respect to any such account;

v.      Complete and file federal and state tax returns on behalf of the Reorganized Debtor;

vi.     Pay all reasonable and necessary costs of administration, including professional fees, associated with the administration of the Plan, the Reorganized Debtor and/or the Assets;

vii.    Subject to the limitations contained in the Plan, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all Claims;

viii.   Make the distributions in accordance with the terms of the Plan;

ix.     Investigate, prosecute, litigate, sell, transfer or abandon any Cause of Action, including, but not limited to, Avoidance Actions;

x.      Employ and consult with counsel, brokers, consultants, custodians, investment advisors, asset services, expert witnesses, auditors, accountants, other agents and any other individuals and/or professionals (any of which may be the Liquidating Supervisor and his or her firm) in connection with the administration of the Plan, the Reorganized Debtor and/or the Assets;

xi.     File a suit in interpleader or in the nature of interpleader in any court of competent jurisdiction with respect to any Asset;

xii.    File any other appropriate action for relief in a court of competent jurisdiction; and

xiii.   Take such steps as provided as necessary and proper to close the Bankruptcy Case and dissolve the Reorganized Debtor.

(c) <u>Corporate Authority.</u>  As of the Effective Date, the Liquidating Supervisor shall have the exclusive right and duty to manage the Reorganized Debtor and to exercise the powers of the Debtor's board of directors and officers subject, however, to any limitations of liability set forth in the Plan.  As of the Effective Date, the Liquidating Supervisor is empowered and authorized to exercise such powers without any further corporate authority (such as approval by any shareholders) that may have been required prior to the Effective Date.  As of the Effective Date, all actions of the Reorganized Debtor shall be taken by the Liquidating Supervisor, or his designee, in the name of and on behalf of the Reorganized Debtor and/or the Estate.

**5.2    Sales of Assets.**

Confirmation of the Plan and the occurrence of the Effective Date shall constitute authorization for the Reorganized Debtor, without further order of the Bankruptcy Court, to sell, lease, exchange, transfer, convey or otherwise dispose of any Assets free and clear of all liens, claims and interests.

**5.3    Corporate Action.**

All matters provided for in the Plan involving any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to be authorized, and shall be in effect, without any requirement of further action by the Debtor or the Reorganized Debtor, their agents, representatives, members, managers, officers, directors or Affiliates.

**5.4    Organization Documents and Good Standing.**

As of the Effective Date, the Debtor's Organization Documents shall be amended as necessary to effectuate the terms of the Plan and shall become the Organization Documents of the Reorganized Debtor.  To the extent that there is any inconsistency between the Plan and any of the Organization Documents, the terms of the Plan shall control.  To the extent the Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remain as an organized legal entity in good standing and/or remain authorized as organized legal entities to conduct business in any jurisdiction, the Debtor and/or the Reorganized Debtor, as the case may be, shall be deemed to be in compliance with any such laws if they comply with such laws within six months after the Effective Date.

**5.5    Vesting of Property and Estate Powers**

Upon the Effective Date, the Assets shall vest in the Reorganized Debtor.  Except as may be expressly provided in the Plan or in a Final Order of the Bankruptcy Court, no Assets shall be deemed abandoned and no defense, set-off, counterclaim or right of recoupment of the Debtor shall be deemed waived, released or compromised.

Upon the Effective Date, the Reorganized Debtor shall be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code with respect to all Assets and rights belonging to the Estate, including, without limitation the standing and authority to commence, prosecute and compromise objections to Claims and Causes of Action, whether initially filed by the Debtor or as may be filed by the Reorganized Debtor.  The Reorganized Debtor shall stand in the same position as the Debtor and/or the Estate with respect to any claim the Debtor and/or the Estate may have had to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Reorganized Debtor shall succeed to all of the Debtor's and/or the Estate's rights to preserve, assert or waive any such privilege.

**5.6    Preservation of Causes of Action**

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Final Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Reorganized Debtor will exclusively retain and may enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(A) of the Bankruptcy

Code, any Claims, Causes of Action and demands and rights relating thereto that the Debtor or its Estate may hold against any person or entity. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to it by virtue of or in connection with the confirmation, consummation of effectiveness of the Plan. Among the Causes of Action that are preserved include, without limitation, the following: (a) Avoidance Actions, including, without limitation, those set forth on the Debtor's Statement of Financial Affairs that have been filed with the Bankruptcy Court; (b) rights of setoff, counterclaim and recoupment; (c) claims and defenses on contracts or for breaches of duties imposed by law; (d) the right to object to claims or interests; (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code; (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury; (g) claims and defenses for the violation of M.G.L. c. 93A; (h) claims and defenses for unjust enrichment; (i) claims for tax refunds; (j) pre-petition litigation in which the Debtor was the plaintiff; and (k) claims and defenses arising out of the Asset Purchase Agreement.

### 5.7    Compromises

After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order or notice to creditors and/or parties in interest, to compromise, settle and/or otherwise dispose of any disputed Claims and/or Causes of Action.

### 5.8    Default.

No event of default under the Plan shall occur unless, in the event of a breach of the Debtor's obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Reorganized Debtor and such breach is not cured: (i) in the event of a breach that can be cured by the payment of a sum of money, within ten (10) days of the Reorganized Debtor's receipt of such notice; and (ii) for any other breach, within thirty (30) days of the Reorganized Debtor's receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Reorganized Debtor has commenced curing such breach and continues to cure such breach, the thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

### 5.9    Retention of Professionals

The Reorganized Debtor may retain such attorneys (including special counsel) accountants, advisors, expert witnesses, and other Professionals as it considers advisable without necessity of approval of the Court. Persons who served as Professionals to the Debtor prior to the Effective Date may provide services to the Reorganized Debtor. The fees and expenses of the Liquidating Supervisor and the professionals retained by the Reorganized Debtor shall be paid by the Reorganized Debtor in the ordinary course of business without the need for the approval of the Bankruptcy Court.

### 5.10    Tax Returns

In the event that any required tax returns are not filed by the Debtor prior to the Effective Date, the Reorganized Debtor shall prepare or cause to be prepared, and shall file on behalf of the Debtor and the Estate, all state and federal tax returns required to be filed under applicable law, and shall pay all taxes due in connection with such returns.  The Reorganized Debtor is hereby authorized to file such returns on behalf of the Debtor.  The Reorganized Debtor shall have all of the rights and benefits of a "trustee" under Section 505 of the Bankruptcy Code for all periods until a Final Decree is entered closing the Bankruptcy Case.  No entity shall be entitled to assert any claim for any excise or property tax accruing after the Confirmation Date.

### 5.11    Dissolution of the Debtor.

Upon the completion of the administration of all of the Debtor's Assets pursuant to the Plan, the Reorganized Debtor shall be deemed to be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Reorganized Debtor or payments to be made in connection therewith.  The Reorganized Debtor shall not be required to file any documents, or take any other action, to withdraw their business operations from any states in which the Debtor was previously conducting business operations.

### 5.12    Resignation of Officers and Directors.

Upon the Effective Date, all of the Debtor's officers and directors shall be deemed to have resigned without the necessity of any further action or writing, and the Liquidating Supervisor shall be irrevocably appointed as the sole officer and director to the extent required under applicable non-bankruptcy law, and shall exercise all powers of such parties to the extent necessary to effectuate the Plan.

### 5.13    Final Decree

It shall be the exclusive duty of the Reorganized Debtor to prepare and file a motion requesting that the Court enter a Final Decree in the Bankruptcy Case.

## ARTICLE VI

## DISTRIBUTIONS ON CLAIMS AND RESOLUTIONS OF DISPUTED CLAIMS

### 6.1    Method of Distributions Under the Plan.

(a)    In General. Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Reorganized Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Reorganized Debtor have been notified in writing of a change of address as of the Distribution Record Date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.  The

Reorganized Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)     Form of Distributions.  Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Reorganized Debtor pursuant to the Plan shall be made by check.

(c)     Distributions to be on Business Days.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)     Fractional Dollars.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

(e)     Distributions to Holders as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  The Reorganized Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

**6.2     Objections to Disputed Claims.**

The Reorganized Debtor may file any objections to Claims against the Debtor.

**6.3     Deadline for Objecting to Disputed Claims.**

Except as otherwise provided by order of the Bankruptcy Court and except with respect to an objection to a Claim based on Section 6.6 of the Plan, the Reorganized Debtor may file objections to Claims against the Debtor until the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) 120 days after the Effective Date.

### 6.4    Estimation of Claims.

The Debtor or the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.  In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Debtor and/or the Reorganized Debtor from pursuing any supplemental proceedings to object to any payment of such Claim.  All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 6.5    Disputed Claims Reserve.

(a)    <u>Establishment</u>. A reserve shall be maintained equal to 100% of the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Final Order.

(b)    <u>Investment of Cash</u>. Cash in the Disputed Claims Reserve may be invested only in Cash Equivalents having maturities sufficient to enable the holder of the Dispute Claim Reserve to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims.  Any interest, income, distributions or accretions on account of such investment in Cash Equivalents in the Disputed Claims Reserve shall be for the sole benefit and account of the Reorganized Debtor, and the Reorganized Debtor shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)    <u>Distributions Upon Allowance of Disputed Claims</u>.  The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.  No holder of a Disputed Claim shall have any claim against the respective Disputed Claims Reserve or the Reorganized Debtor with respect to such Claim until the Disputed Claim shall become an Allowed Claim.

**6.6     Reversion of Unclaimed Checks and Disputed Claims Reserve.**

The following amounts shall revert to and be vested in the Reorganized Debtor free and clear of liens, claims, encumbrances, and interests: (a) the amount of any checks issued for distributions to the holders of Allowed Claims under the Plan that remain uncashed for a period of 180 days after the date of such distribution; and (b) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim.

**6.7     Obligation to Provide Tax Documents.**

No Person entitled to a payment or distribution under the Plan, from the Estate or from the Reorganized Debtor shall receive such distribution or payment until the Person provides the Reorganized Debtor with: (a) a W-9 or similar federal or state tax form, and (b) such other tax forms as are reasonably requested by the Liquidating Supervisor (collectively the "Tax Forms"). If any Person holding an Allowed Claim fails to provide a Tax Form to the Liquidating Supervisor after two written requests for a Tax Form, such Person's Allowed Claim shall be disallowed and expunged without further order of the Bankruptcy Court.

## ARTICLE VII

## LIQUIDATING SUPERVISOR

**7.1     Limitation on Liquidating Supervisor's Liabilities as to Losses.**

The Liquidating Supervisor shall not be responsible, and shall have no liability whatsoever to any Person for any loss to the Reorganized Debtor resulting from the investment of the Assets, or their proceeds, in any Permitted Investments.  The Liquidating Supervisor shall not invest or reinvest any Assets other than in a Permitted Investment.  The Liquidating Supervisor shall not have any liability to any retirement, employee benefit, or pension plan of the Debtor in excess of the amounts available to be distributed from such plans.

**7.2     Selection of Agents.**

The Liquidating Supervisor may retain his or her firm or company to provide professional services in conjunction with his duties under the Plan.  The Liquidating Supervisor shall not be liable for any loss to the Reorganized Debtor or any person with an interest in the Reorganized Debtor by reason of any mistake or default of any such agent or consultant unless such mistake or default breaches the standard of care set forth in Section 7.4(a) of the Plan.  The Liquidating Supervisor may retain the services of any firm that served as counsel for an Estate representative during the Bankruptcy Case.

**7.3     Maintenance of Register.**

The Liquidating Supervisor shall at all times maintain a register of the names, addresses, and amount of the Claims against, and Equity Interests in, the Reorganized Debtor as of the Effective Date and as revised from time to time thereafter.

**7.4    Liability of Liquidating Supervisor.**

(a)    <u>Standard of Care</u>.  The Liquidating Supervisor shall not be liable for any action taken or omitted to be taken by him in good faith and in the exercise of reasonable judgment and believed to be within the discretion or power conferred by the Plan, or be responsible for the consequences of any act or failure to act, except for bad faith, gross negligence or willful misconduct.  The Liquidating Supervisor shall not have any fiduciary relationship with any party by virtue of the Plan except as specifically set forth in the Plan:

(i)    The Liquidating Supervisor shall not, solely by virtue of his position as Liquidating Supervisor, be liable or in any way responsible for the acts or omissions of the Debtor, their boards of directors, officers, employees, or agents, that occurred prior to the Effective Date.

(ii)    Unless indemnified to his satisfaction against liability and expense, the Liquidating Supervisor shall not be compelled to do any act or to take any action toward the execution or enforcement of the powers created under the Plan or to prosecute or defend any suit in respect of the Plan.  If the Liquidating Supervisor requests approval from the Bankruptcy Court with respect to any act or action in connection with the Plan, the Liquidating Supervisor shall be entitled (but shall not be required) to refrain (without incurring any liability to any person by so refraining) from such act or action unless and until he has received such instructions or approval.  In no event shall the Liquidating Supervisor or any of his representatives be required to take any action, which he reasonably determines could lead to criminal or civil liability.

(iii)    The Liquidating Supervisor shall not be responsible in any manner to the Debtor, the Estate, any holder of a Claim or Interest, or any party-in-interest for:

(A)    the creditworthiness of any party and the risks involved to the Reorganized Debtor or such holder or party-in-interest;

(B)    the effectiveness, enforceability, genuineness, validity, or any due execution of the Plan as to any person other than the Liquidating Supervisor;

(C)    any representation, warranty, document, certificate, report, or statement made herein or furnished hereunder or in connection with the Plan that does not constitute a breach of the standard of care set forth in Section 7.4(a) of the Plan on the part of the Liquidating Supervisor;

(D)    the existence, priority or perfection of any existing Lien; or

(E)     the observation or compliance with any of the terms, covenants, or conditions of the Plan on the part of any party thereto other than the Liquidating Supervisor.

(iv)   The holders of Claims or Equity Interests and parties-in-interest, by voting for the Plan and/or accepting the benefits of the Plan, have agreed not to sue or otherwise pursue or seek damages from the Liquidating Supervisor except for actions or omissions which violate the standard of care set forth in Section 7.4(a) of the Plan.

(b)     <u>No Liability for Acts of Predecessor</u>.  No successor Liquidating Supervisor shall be in any way responsible for the acts or omissions of any preceding Liquidating Supervisor, nor shall he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Supervisor expressly assumes such responsibility.  Any successor Liquidating Supervisor shall be entitled to accept as conclusive any final accounting and statement of Assets furnished to such successor Liquidating Supervisor by any preceding Liquidating Supervisor and shall be responsible only for those Assets included in such statement.

(c)     <u>No Implied Obligations</u>.  The Liquidating Supervisor's liability shall be limited to the performance of such duties and obligations as are specifically set forth in the Plan.  The Liquidating Supervisor shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties in the Plan, in the Disclosure Statement or in any documents or instrument evidencing or otherwise constituting a part of the Assets.  The Liquidating Supervisor makes no representations as to the value of the Assets.

(d)     <u>Reliance by Liquidating Supervisor on Documents or Advice of Counsel or Other persons</u>.  The Liquidating Supervisor may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel, statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is believed by the Liquidating Supervisor to be genuine and to be signed or presented by the proper persons.  Subject to his obligation to meet the standard of care in Section 7.4(a), the Liquidating Supervisor shall have no liability for any act which he may do or omit to do in reliance upon the foregoing.

(e)     <u>No Personal Obligation for the Debtor's Liabilities</u>.  Holders of Claims and Equity Interests, and other persons transacting business with the Liquidating Supervisor in his capacity as Liquidating Supervisor, shall be limited to the Assets to satisfy any liability incurred by the Liquidating Supervisor to such person in carrying out the terms of the Plan, and the Liquidating Supervisor shall have no personal obligation to satisfy any such liability.

**7.5     Reports; Tax Returns.**

The Liquidating Supervisor shall prepare and submit any and all reports required under the Plan and as may be further ordered by the Bankruptcy Court.  After the Effective Date, the

Liquidating Supervisor shall be responsible for the filing of any and all federal and state tax returns required by law to be filed by the Reorganized Debtor, including all final tax returns and shall pay all tax liabilities arising from such tax return.

### 7.6    Liquidating Supervisor's Compensation.

The Liquidating Supervisor shall be paid $2,500 per month, exclusive of any services rendered by the Liquidating Supervisor's firm as financial advisor to the Reorganized Debtor. The Liquidating Supervisor shall be entitled to reimbursement for all reasonable out-of-pocket expenses incurred in the performance of his duties under the Plan.  The Liquidating Supervisor shall not be entitled to a commission.

### 7.7    Liquidating Supervisor's Indemnification.

The Liquidating Supervisor shall be indemnified by, held harmless, and receive reimbursement from the Assets for any and all claims, actions, demands, losses, damages, expenses, and liabilities, including without limitation court costs, attorneys' fees and accountants' fees incurred, except in the event that a court of competent jurisdiction determines that such losses or claims were the result of a breach of the standard of care set forth in Section 7.4(a) of the Plan.

### 7.8    Removal of Liquidating Supervisor.

The Liquidating Supervisor may be removed only for cause upon a motion to the Court. If the Liquidating Supervisor is removed for cause, the Liquidating Supervisor shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation.  The term "cause" shall mean: (a) the Liquidating Supervisor's gross negligence or willful failure to perform his duties under the Plan, (b) the Liquidating Supervisor's misappropriation or embezzlement of any Assets or the proceeds of the Assets, or (c) the Liquidating Supervisor's continued or repeated negligence or failure to perform his duties under the Plan.  If a Liquidating Supervisor is unwilling or unable to serve by virtue of his inability to perform his duties due to death, illness, or other physical or mental disability, subject to a final accounting, such Liquidating Supervisor shall be entitled to receive all accrued and unpaid fees, reimbursement of expenses, and other compensation incurred before his removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Supervisor.

### 7.9    Resignation of Liquidating Supervisor.

A Liquidating Supervisor may resign upon motion to the Bankruptcy Court, which resignation shall become effective at the time specified by the Court.  If a Liquidating Supervisor resigns from his position hereunder, subject to a final accounting, such Liquidating Supervisor shall be entitled to receive all accrued unpaid fees, reimbursement of expenses, and other compensation incurred before his resignation, and any out-of-pocket expenses reasonably

incurred in connection with the transfer of all powers and duties to the successor Liquidating Supervisor.

**7.10    Successor Liquidating Supervisor.**

In the event that the Liquidating Supervisor is removed, resigns, or otherwise ceases to serve as Liquidating Supervisor, Keith Lowey shall be appointed as the successor Liquidating Supervisor.  In the event that Keith Lowey is removed, resigns, or otherwise ceases to serve as Liquidating Supervisor, a successor Liquidating Supervisor may be appointed by motion of counsel to the Reorganized Debtor, subject to approval by the Bankruptcy Court.

**7.11    Liquidating Supervisor Authority.**

There is no obligation on the part of any party transacting business with the Reorganized Debtor or any agent of the Reorganized Debtor (including the Liquidating Supervisor) to: (a) inquire into the validity, expediency, or propriety of any transaction, (b) inquire into the authority of the Liquidating Supervisor, or any agent of the Liquidating Supervisor, to enter into or consummate the transaction, or (c) to monitor the application of the purchase money or other consideration paid or delivered to the Reorganized Debtor.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    Assumption/Rejection of Executory Contracts and Unexpired Leases**

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpired lease (excluding insurance policies) that (a) has not expired by its own terms on or prior to the Confirmation Date, (b) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (c) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (d) is not designated by the Debtor as being an executory contract or unexpired lease to be assumed at the time of confirmation of the Plan, shall be deemed rejected on the Effective Date.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute the approval of the rejection of executory contracts and unexpired leases pursuant to this section of the Plan and Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

**8.2    Payments Related to the Assumption of Executory Contracts and Unexpired Leases**

(a)    Payment of Claims Arising From Assumed Contracts And Leases.  Except as provided in the Asset Purchase Agreement or any other written agreement with a counter-party to an executory contract or unexpired lease, any Allowed Claims arising from the assumption of an executory contract or unexpired lease will receive, in full and complete satisfaction, settlement, release and discharge of such Claims, payment in the ordinary course of business as

and when such Allowed Claims become due pursuant to such executory contract or unexpired lease.

(b)      Disputed Claims and Bar Date.  If there is a dispute regarding (i) the amount of any claim arising from the assumption or rejection of an executory contract or unexpired lease, (ii) the ability of the applicable Debtor or any assignee to provide "adequate assurance of further performance," within the meaning of Section 365 of the Bankruptcy Code, under a contract or lease to be assumed, or (iii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Final Order resolving the dispute and approving the assumption.

**8.3      Rejection Damage Claims.**

If the rejection of an executory contract or unexpired lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Reorganized Debtor on or before thirty (30) days following the later to occur of: (a) the rejection of such executory contract or unexpired lease, and (b) the Confirmation Date.  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan.  The Reorganized Debtor shall have the right to object to any such Claim for rejection damages.

## ARTICLE IX

## RELEASE AND SATISFACTION OF CLAIMS

**9.1      Satisfaction of Claims.**

Except as otherwise provided in the Plan or in an agreement by the Debtor that has been approved by the Bankruptcy Court, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement and release as against the Debtor and the Reorganized Debtor of any debt or obligation of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtor or the Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt, obligation or Equity Interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted the Plan.

**9.2      Injunction Relating to the Plan.**

26

As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the Estate, and/or the Reorganized Debtor, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities against the Debtor, except to the extent expressly permitted under the Plan.

### 9.3    Discharge

The Plan is a plan of the type described in Section 1141(d)(3) of the Bankruptcy Code and, accordingly, the Debtor shall not receive a discharge.

### 9.4    Cancellation of Existing Indebtedness and Liens.

Except as may otherwise be provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing same, shall be canceled and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtor.  To the extent deemed necessary or advisable by the Reorganized Debtor, any holder of a Claim shall promptly provide the Reorganized Debtor with an appropriate instrument of cancellation or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation or release, including the cancellation or release of any Lien securing such Claim.

### 9.5    Exculpation

Except as otherwise set forth in the Plan, neither the Debtor, the Reorganized Debtor, the Liquidating Supervisor nor any of their respective employees, advisors, attorneys, agents, successors or assigns, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of the Bankruptcy Case, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan occurring prior to the Effective Date, provided that the terms of this Section 9.5 shall not apply to any liability for willful misconduct or ultra vires acts.

### 9.6    Setoff

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Estate and/or the Reorganized Debtor of any right of setoff the Estate and/or Reorganized Debtor may have against any Person. Neither the failure to setoff nor the

allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor or Reorganized Debtor, as applicable, may have against the holder of any Claim.

## ARTICLE X

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

**10.1    Conditions Precedent to Effectiveness.**

Subject to Section 10.2 of the Plan, the following are conditions precedent to the occurrence of the Effective Date:

(a)    The Confirmation Order, in form and substance reasonable acceptable to the Debtor shall have been entered by the Bankruptcy Court and shall not be subject to any stay;

(b)    The Confirmation Order shall have become a Final Order;

(c)    All actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective.

**10.2    Waiver of Conditions**

Except for the condition set forth in Section 10.1(a) of the Plan, the Debtor may, in its sole discretion, waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 10.1, without notice to any creditors or parties in interest and without Bankruptcy Court approval.  The failure to satisfy or waive any condition precedent to the occurrence of the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied.

**10.3    Effect of Non-occurrence of Conditions to the Effective Date**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Debtor or constitute an admission, acknowledgement, offer or undertaking by the Debtor.

## ARTICLE XI

## RETENTION OF JURISDICTION

**11.1**    From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Case and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)    To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any

controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)     To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, authorized pursuant to the Plan or the Bankruptcy Code;

(c)     To enforce and adjudicate the provisions of the Plan subject to the terms of the Plan;

(d)     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(e)     To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(f)     To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(g)     To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(h)     To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(i)     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(j)     To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(k)     To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(l)     To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to the Plan; and

(m)     To enter an order and/or final decree concluding the Bankruptcy Case.

## ARTICLE XII

## MISCELLANEOUS

### 12.1   Continuation of Injunctions and Stays

All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Liquidating Supervisor has concluded the administration of the Assets and the Plan.

### 12.2    Exemption from Transfer Taxes

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any of the foregoing associated with the Sale, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

### 12.3    Amendment or Modification of the Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

The Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

### 12.4    Severability

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 12.5    Revocation or Withdrawal of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

### 12.6    Binding Effect.

The rights, duties, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

### 12.7    Notices

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

Intergalactic Therapeutics, Inc.
C/o Craig Jalbert, CRO
Verdolino & Lowey, P.C.
Pine Brook Office Park, 2Suite 101
124 Washington St.
Foxborough, MA 02035

With a copy to:

Murphy & King, P.C.
Attn: Andrew G. Lizotte, Esq.
28 State Street, Suite 3101
Boston, MA 02109

**12.8    Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.9    Withholding and Reporting Requirements**

In connection with the consummation of the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirement.

**12.10   Post-Confirmation Fees, Final Decree**

The Reorganized Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After Confirmation, the Reorganized Debtor will serve the U.S. Trustee with a quarterly financial report for each quarter (or portion thereof) the case remains open.  The quarterly financial report will include the following:

(a)    A statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan;

(b)    A summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the Plan;

(c)    The Reorganized Debtor's projections as to its continuing ability to comply with the terms of the Plan;

(d)    A description of any other factors which may materially affect the Reorganized Debtor's ability to consummate the Plan; and

(e)    An estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

**12.11   Headings**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.12   Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

Respectfully submitted
INTERGALACTIC
THERAPEUTICS, INC.
By its counsel,

*/s/Andrew G. Lizotte*
Harold B. Murphy (BBO #362610)
Andrew G. Lizotte (BBO #559609)
Leah A. O'Farrell (BBO #708424)
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, MA 02109
(617) 423-0400
alizotte@murphyking.com

Dated: April 11, 2024